## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Clarence Glaspell, Mary Glaspell,**
**and Jacob Glaspell**
**Plaintiffs Below, Petitioners**

**FILED**

November 3, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 14-0175** (Taylor County 09-C-55)

**Taylor County Board of Education,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioners Clarence Glaspell, Mary Glaspell, and Jacob Glaspell, by counsel LaVerne Sweeney, appeal the Circuit Court of Taylor County's December 16, 2013, order granting summary judgment to respondent. Respondent Taylor County Board of Education, by counsel Keith C. Gamble and Kenneth L. Hopper, respond in support of the circuit court's order. Petitioners also filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### I.  Factual and Procedural Background

On June 2, 2008, Jacob Glaspell (then a minor) was choked by Jesse Murphy while both were enrolled as students at Grafton High School ("GHS").[1] The incident occurred in the school on a ramp adjacent to the choral department, and several administrators were involved in responding to and investigating the incident, including David Knotts, the principal at GHS during the 2007-2008 school year; Lori Shumaker, an assistant principal; and Mary Tucker, an assistant principal. The school determined that Jacob Glaspell, Jesse Murphy, and other students were engaged in horseplay. After the incident, several students informed Mrs. Tucker that they were playing the "choking game".[2] According to school administrators, prior to this incident,

---

[1] While respondent does not appear to dispute that Petitioner Jacob Glaspell was injured as a result of being choked, neither petitioners nor respondent set forth the type or extent of his injuries.

[2] It is this Court's understanding that the choking game involves restricting blood flow to the brain by squeezing or applying pressure to the neck and that once the pressure is released, the individual experiences a high.

1

they had no knowledge of the choking game. While some school administrators reviewed video of the incident, attempts to save the video failed when trying to load it onto disks and the video is no longer available to view.[3]

Petitioners Mary and Clarence Glaspell filed the original civil action in the Magistrate Court of Taylor County on March 20, 2009. On August 14, 2009, the action was removed to the Circuit Court of Taylor County, where it was largely inactive until February 15, 2011, when an order was entered permitting petitioners to amend their pleadings to add Jacob Glaspell as a plaintiff and the Taylor County Board of Education ("the Board") as a defendant. On April 7, 2012, petitioners filed an amended complaint adding those parties. The amended complaint contained only one claim of negligence against the Board. Petitioners filed a second motion to amend their complaint wherein they requested to add Jesse Murphy as a defendant, and that motion was granted. The second amended complaint contained the same allegation of negligence against the Board as the first amended complaint. Petitioners then sought permission to file a third amended complaint to add additional claims of negligence against the Board. That motion was granted, but the third amended complaint was never served on the Board or its counsel.

Following the close of discovery, the Board filed a motion for summary judgment. On November 7, 2013, the circuit court heard oral argument on the motion. Shortly thereafter, the circuit court executed an order indicating that it was prepared to grant summary judgment in favor of the Board. The court directed counsel for the parties to submit proposed findings of fact and conclusions of law, and the parties complied. The circuit court then executed the Board's "Order Granting Defendant, Taylor County Board of Education's motion for Summary Judgment" on December 16, 2013. Petitioners appeal from that order.

## II. Standard of Review

Petitioners appeal the circuit court's grant of summary judgment to respondent. Our standard of review for such order is de novo. Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."); Syl. Pt. 2, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998).

## III. Discussion

On appeal to this Court, petitioners assert six assignments of error. First, petitioners argue that respondent was negligent as to the supervisory coverage ratio in the school cafeteria immediately prior to the subject injury. Petitioners contend that respondent had a duty to protect and serve the students and that part of the duty was to protect them from being harmed or distracted by students who lose interest in learning and focus on being disruptive. In addition, petitioners argue that respondent was required to safeguard the health and well-being of the children to protect them while participating in the lunch program from the time they leave the classroom for lunch until they return to the classroom at the conclusion of lunch. Petitioners argue that West Virginia Code § 18-5-18a, "Maximum teacher-pupil ratio," is applicable in the

---

[3] Petitioners admit that they were able to view the video of the incident on June 2, 2008.

cafeteria setting at the high school. However, that statute relates solely to the teacher-pupil ratio in the classroom for students in kindergarten through sixth grade. Petitioners fail to cite to any statutes or cases that set forth a teacher-pupil ratio for the cafeteria or other non-classroom settings. There were two to three teachers in the cafeteria during the lunch period. Further, the student who caused Petitioner Jacob Glaspell's injuries did so outside of the cafeteria. Therefore, we find that the circuit court did not err in granting summary judgment on this ground.

Petitioners' second, third, fourth, and fifth assignments of error all relate to supervision of the students. In petitioners' second assignment of error, they allege that respondent was negligent because its supervisory personnel failed to see up to ten students engaged in a choking game. This alleged error relates to petitioners' fourth assignment of error that respondent was negligent because the choking games had been taking place for decades amongst youth and there had been nationally reported incidents of such games. Petitioners contend that respondent and respondents' employees should have known of the students' propensity to engage in choking game activities. They also assert that it was foreseeable that the students would continue participating in this game after leaving the cafeteria. Therefore, petitioners allege that respondent's employees breached their supervisory duties. In response to respondent's motion for summary judgment below, petitioners submitted an affidavit that included data concerning the choking game. Petitioners now cite to "publications" which include articles from Wikipedia and the Centers for Disease Control, arguing that the articles were easily available through a number of news sources prior to the subject incident.

Respondent admits that its employees did not notice the students involved in a choking game in the cafeteria. However, there is no dispute that Jesse Murphy did not have a history of violence, and there were no known issues between Mr. Murphy and Petitioner Jacob Glaspell. Respondent also asserts that neither it nor its employees were aware of the existence of the choking game at the time of this incident. "*Black's Law Dictionary* defines 'actual knowledge' as 'direct and clear knowledge, as distinguished from constructive knowledge,' *Black's Law Dictionary* at 888 (8th Ed.2004), and defines 'actual notice' as '[n]otice given directly to, or received personally by, a party.' *Id.* at 1090." *Mace v. Ford Motor Co.*, 221 W.Va. 198, 204, 653 S.E.2d 660, 666 (2007). Petitioners fail to cite to any evidence proving that respondent or its employees had actual knowledge or notice of the existence of this game in order to be on watch for the same. It is not feasible for school employees to be able to see what every student is doing in the cafeteria and hallways at every moment throughout a school day, particularly at the high school level. For these reasons, we find that the circuit court did not err in granting summary judgment to respondent on these grounds.

Petitioners' third assignment of error is that respondent was negligent because it was not monitoring the video feeds from the cafeteria during a lunch period while students were present. Petitioners argue that because the school had sixteen working video cameras positioned throughout the school at the time of the incident, an employee should have been positioned in the office constantly watching the video feed. In essence, petitioners contend that if a school employee had been monitoring the feed, the students' activities leading up to and at the time of the incident would have been observed and stopped. In their related fifth assignment of error, petitioners contend that respondent was negligent because the hallways were inadequately supervised when students were present. They argue that when masses of students are to be in the

hallways, an ounce of prevention beats a pound of cure, again asserting that respondent was negligent in failing to have the supervision in place to prevent this incident.

As set forth above, it is virtually impossible for school employees to be able to see what every student is doing at every moment throughout the school. As a practical matter, it is doubtful that a school employee would be able to simultaneously watch the video feeds from all sixteen cameras and prevent wrongdoing by students. Again, petitioners base their arguments on speculation that constant monitoring of the video feeds would have prevented this incident. Similarly, they assert that having a sufficient number of teachers in the hallways might have prevented this incident. Petitioners fail to present any evidence that the hallways were inadequately supervised, and they cite no law in support of this assignment of error. As set forth by the circuit court, without a breach of duty giving rise to the claim of negligence, respondent is entitled to immunity under the Governmental Tort Claims and Reform Act. W.Va. Code §§ 29-12A-1 to -18 (2013). Therefore, we find no error in the circuit court's grant of summary judgment to respondent on this issue.

Petitioner's sixth and final assignment of error is that petitioners offered adequate evidence in response to a motion for summary judgment to establish that a genuine issue of fact existed as to whether respondent was negligent. In support of this argument, petitioners assert that they offered evidence to support each of their contentions of error set forth herein. Petitioners argue that any lack of evidence is due to the spoliation of evidence by the Board's employees.[4] Petitioners do not allege that respondent or its employees intentionally deleted the video footage, and it is undisputed that petitioners viewed the same. There do not appear to be factual disputes regarding the number of Board employees in any location in the school, and respondent admits that there were no employees constantly monitoring the video feed. Thus, it is unclear what the video would show that was not already in evidence for consideration by the circuit court. Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is proper where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In this case, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." W.Va.R.Civ.P. 56(c). Therefore, we find that the circuit court did not err in finding that petitioners did not offer adequate evidence in response to respondent's motion for summary judgment.

For the foregoing reasons, we conclude that the circuit court did not err in granting summary judgment in favor of respondent. Accordingly, we affirm.

Affirmed.

---

[4] While petitioners do not assert a specific assignment of error related to spoliation of evidence, they argue the same as part of their contention that respondent was not entitled to summary judgment. After some school employees and petitioners viewed video footage from the date of the incident, school personnel were attempting to copy the footage. However, they were unsuccessful and the footage was reportedly accidentally deleted.

4

**ISSUED:**  November 3, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II